IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LYNNE FRENCH, | ) | CASE NO. 5:13 CV 1655 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by Lynne French under 42 U.S.C. § 405(g) for judicial review

of the final decision of the Commissioner of Social Security denying her applications for

disability insurance benefits and supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 17. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 12.

[4] ECF # 13.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.    Background facts and decision of the Administrative Law Judge ("ALJ")**

French, who was 59 years old at the time of the hearing,[11] has a high school education, lives alone with a pet, and worked previously as a home health aide.[12]

The ALJ, whose decision became the final decision of the Commissioner, found that French had the following severe impairments: degenerative disc disease of the lumbar spine with mild grade I retrolisthesis of L5 on S1, personality disorder not otherwise specified, major depressive disorder, and generalized anxiety disorder.[13]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding French's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that claimant can

---

[6] ECF # 14.

[7] ECF # 15 (French's brief); ECF # 18 (Commissioner's brief); ECF # 19 (French's reply brief).

[8] ECF # 15-2 (French's charts); ECF # 18-1 (Commissioner's charts).

[9] ECF # 15-1 (French's fact sheet).

[10] ECF # 21.

[11] Transcript ("Tr.") at 26, 28.

[12] *Id.* at 25-26.

[13] *Id.* at 17.

perform simple, routine tasks which can be learned in thirty days or less; the claimant can perform low-stress tasks, meaning she is precluded from tasks involving high production quotas such as piecework or assembly line work, strict time requirements, arbitration, negotiation, confrontation direction of the work of others or responsibility for the safety of others; the claimant is able to make judgments on simple, work related decisions; the claimant is able to respond to usual work situations and changes in a routine work setting.[14]

The ALJ decided that this residual functional capacity precluded French from performing her past relevant work.[15]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that French could perform.[16] The ALJ, therefore, found French not under a disability.[17]

## C.    Issues on judicial review and decision

French asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, French presents the following issues for judicial review:

•    The RFC finding is not supported by substantial evidence because the ALJ failed to give controlling weight to the opinion of French's treating psychiatrist, Dr. Thakore; gave no weight to the opinions of two state

---

[14] *Id.* at 20-21.

[15] *Id.* at 26.

[16] *Id.* at 27.

[17] *Id.*

reviewing physicians; and little weight to the consultative examining psychologist.[18]

• The RFC is not supported by substantial evidence because the evidence cited by the ALJ is "cherry-picked" evidence.[19]

• The finding at step five is not supported by substantial evidence because the question to the VE, which was based on the RFC, did not accurately portray French's mental limitations.[20]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

### A.    Standards of review

### 1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

---

[18] ECF # 15 at 4.

[19] *Id.* at 4-5.

[20] *Id.* at 5.

-4-

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[24]

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[24] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[25]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[28] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[31]

---

[25] *Id.*

[26] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[27] *Id.*

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[31] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[33] The court noted that the regulation expressly contains a "good reasons" requirement.[34] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[35]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[36] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[37] The former confers a substantial, procedural right on

---

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[33] *Id.* at 544.

[34] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[35] *Id.* at 546.

[36] *Id.*

[37] *Id.*

-7-

the party invoking it that cannot be set aside for harmless error.[38] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[40] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[41] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[42] *Blakley v. Commissioner of Social Security*,[43] and *Hensley v. Astrue*.[44]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[45] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[38] *Id.*

[39] *Id.*

[40] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[41] *Id.* at 375-76.

[42] *Rogers*, 486 F.3d at 242 (6th Cir. 2007).

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[44] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[45] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[46] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[47] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[48]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[49] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[50] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[51] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[46] *Id.*

[47] *Id.*

[48] *Rogers*, 486 F.3d at 242.

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

[51] *Id.*

and the treatment reports.[52] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[53]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[54]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[55] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[56] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[57] or that objective medical evidence does not support that opinion.[58]

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Rogers*, 486 F.3d 234 at 242.

[56] *Blakley*, 581 F.3d at 406-07.

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[59] The Commissioner's *post hoc* arguments on judicial review are immaterial.[60]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[61]

- the rejection or discounting of the weight of a treating source without assigning weight,[62]

---

[59] *Blakley*, 581 F.3d at 407.

[60] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[61] *Blakley*, 581 F.3d at 407-08.

[62] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[63]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[64]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[65] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[66]

The Sixth Circuit in *Blakley*[67] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[68] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[69]

---

[63] *Id.*

[64] *Id.* at 409.

[65] *Hensley*, 573 F.3d at 266-67.

[66] *Friend*, 375 F. App'x at 551-52.

[67] *Blakley*, 581 F.3d 399.

[68] *Id.* at 409-10.

[69] *Id.* at 410.

In *Cole v. Astrue*,[70] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[71]

## B. Application of standards

As noted above, this case centers on the ALJ's treatment of the functional limitations opinion of French's treating psychiatrist, Dr. Yuan Thakore.[72]

There is no dispute that the ALJ did not perform the separate, two-step analysis of Dr. Thakore's opinion that is required by *Gayheart*. However, the Commissioner argues, as is frequently the case, that a holistic reading of the ALJ's decision will show that the ALJ substantially met the requirements of *Gayheart*, thus providing substantial evidence to support the finding.

The ALJ's decision addresses Dr. Thakore's opinion in two lengthy paragraphs.

Initially, she summarizes Dr. Thakore's medical source statement of January 23, 2012. In that statement, Dr. Thakore opined that French had marked or extreme limitations in: (1) maintaining attention for extended periods, (2) performing activities on a schedule,

---

[70] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[71] *Id.* at 940.

[72] Tr. at 24. Dr. Thakore is identified here by the ALJ as "the claimant's treating psychiatrist."

-13-

(3) maintaining regular attendance and being punctual, (4) completing a normal workday and workweek without interruptions from psychologically based symptoms, (5) performing at a consistent pace without an unreasonable number of rest periods, (6) accepting instructions from and responding appropriately to criticism from supervisors, and (7) responding appropriately to changes in the work setting.[73] As the ALJ observed, Dr. Thakore based these limitations to French's functional capacities by relating his view that "when depressed she isolates and does not communicate with professionals like the BVR and just doesn't show up for work."[74]

In the next paragraph, the ALJ assigned these opinions "less than full weight," because "they are inconsistent with his [Dr. Thakore's] clinical observations and those of the claimant's other mental health treatment providers."[75] In that regard, the ALJ stated that Dr. Thakore's own treatment notes found French to be "cognitively intact" at an examination in 2009.[76] Moreover, the ALJ observed that "no mental health professional, including Dr. Thakore, noted deficits in [French's] memory, concentration or attention during her ongoing treatment."[77] Further, the ALJ stated that "while [French] sporadically reported depression associated with her lack of employment," the actual observations of Dr. Thakore

---

[73] *Id.* at 24-25.

[74] *Id.* at 25.

[75] *Id.*

[76] *Id.*

[77] *Id.*

and other professionals was that French had "a euthymic mood and a full affective range."[78] Finally, the ALJ's decision was that Dr. Thakore's opinion as to French's limitations in the areas of concentration, persistence, and pace, and ability to sustain her efforts for an entire workday or workweek "are not supported by the observations of the claimant he and other treatment providers made during the claimant's treatment."[79]

French argues that the ALJ's opinion is flawed in respect of its treatment of Dr. Thakore on four grounds:

(1)     the ALJ never assigned a specific weight to Dr. Thakore's opinion thus leaving the reviewing court without a basis for meaningful judicial review;[80]

(2)     the ALJ "cherry-picked" entries from treating notes to convey an inaccurate picture of French's condition as seen by her physicians, such as in claiming that her doctors found her mood to be mostly positive or "euthymic," when the treatment notes actually contain many notations of anxiety, depression and even suicide;[81]

(3)     the ALJ "grossly mischaracterized" the reasons French twice was unable to return to work, suggesting that "factors other than her medical impairments" were why she was unsuccessful in returning to work, and so ignoring the fact that she was terminated from both jobs quickly after being hired for not showing up for work, which was linked by her job coach to her depression;[82] and

---

[78] *Id.*

[79] *Id.*

[80] ECF # 15 at 12-13.

[81] *Id.* at 13.

[82] *Id.*

-15-

(4)     the ALJ neglected to consider the findings of non-medical sources, and instead compared Dr. Thakore's opinion to only the findings of other "mental health treatment providers."[83]

In the end, French maintains, the ALJ was forced to "independently craft" an RFC based on selected evidence that essentially amounted to the ALJ "playing doctor."[84] In particular, she contends, none of the activities highlighted by the ALJ as contradicting the opinion of Dr. Thakore establish that "French has the ability to sustain work activity."[85]

As to French's argument that the ALJ did not assign a specific weight to Dr. Thakore's opinion, and did not analyze each element of the regulations in arriving at the decision concerning Dr. Thakore,[86] an ALJ is under no obligation to conduct an "exhaustive factor-by-factor analysis" of each element of the treating physician rule before arriving at a determination of weight.[87] Further, while perhaps the ALJ here could have been more precise in describing the weight assigned, there is no particular terminology for describing weight required in the regulations, and the term used here, along with the reasons given, are sufficient to permit meaningful judicial review.

French's contention that the ALJ "cherry-picked" opposing evidence to reduce the weight given to portions of Dr. Thakore's opinion is also not fully persuasive. First, it is clear

---

[83] ECF # 19 at 4-6.

[84] *Id.*

[85] *Id.* at 9.

[86] *See*, ECF # 15 at 15.

[87] *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

that an ALJ is permitted to treat different portions of a medical source statement differently, so long as good reasons for doing so are provided.[88] Further, this Court must defer to the Commissioner's findings if they are supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion."[89]

Here, Dr. Thakore's opinion that French has marked or extreme limitations in several areas of work-related functioning is not consistent with the following facts expressly noted in the ALJ's decision:

(1)     A "history of conservative treatment for claimant's psychological conditions and the apparent effectiveness of that treatment." In her opinion the ALJ made specific mention of the complaints by French that were in Dr. Thakore's treatment notes, such as for "diminished motivation and energy," as well as of "feelings of guilt, hopelessness and worthlessness and past suicidal ideation."[90] But the ALJ found that French herself had reported that her "depression, anxiety and insomnia had improved since beginning the medications Prozac and Vistaril over one month before."[91] In that regard, the ALJ noted that French has been on the same dosage of Prozac, Buspar and Vistaril since 2010 and that she had reported the medications were helpful and produced no side effects.[92]

(2)     The treatment notes from the mental health professionals involved in French's care at Portage Path were found by the ALJ not to reflect "their regular observation of clinical signs consistent with the

_____

[88] *Rogers*, 486 F.3d at 242.

[89] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation omitted).

[90] Tr. at 22.

[91] *Id.*

[92] *Id.*

-17-

claimant's allegations of the severity of her impairments."[93] Unlike French's characterization that the ALJ here "cherry-picked" a few favorable notes concerning French's condition while ignoring other notes documenting greater impairments, the ALJ actually specifically cited four instances where the Portage Path treatment notes contained observations of French having "a slightly anxious or dysthymic mood," while then specifically citing to 11 places in the treatment notes where French was described as "having a euthymic or pleasant mood and full or appropriate affective range."[94] Far from being either a willful misrepresentation of the facts, or an attempt to selectively cherry-pick only supportive facts from an otherwise non-supportive record, the ALJ here clearly attempted to state the complete nature of the observations by Portage Path staff, and then to understand and document which observations represented "sporadic" findings as opposed to which were the more general or consistent findings.

(3)     As to the most severe reported symptom, the thought of suicide, the ALJ again was careful to document that while French did report that ideation, she was never hospitalized for that condition, and there is no evidence that this symptom was more severe than was noted by Dr. Thakore in August 2009.[95]

(4)     The ALJ also noted that the records showed that when French did not take her medications as prescribed, which at times was "frequently" and for "as long as a month," only "mild dysphoria was observed on examination."[96]

In addition to these findings that are inconsistent with Dr. Thakore's functional limitations opinion, the ALJ also cited elements of French's own Function Reports of 2009

---

[93] *Id.*

[94] *Id.* (citations omitted).

[95] *Id.* at 23.

[96] *Id.*

-18-

and 2010 that were inconsistent.[97] Moreover, the ALJ also took specific note of French's own testimony at the February 2012 hearing where she testified to a full range of daily activities involved with living alone and independently. Those activities, under the conditions described, are, the ALJ found, "inconsistent with her allegations as to the severity of her impairments."[98]

In the end, rather than creating the RFC out of nothing but tissues of misinformation, as French asserts, the ALJ, on the record, stated:

> Given all the factors analyzed in this case, including but not limited to the claimant's work history, her sporadic symptomatic claims to treatment providers, the conservative treatments offered to the claimant, and the relative lack of strongly positive clinical signs documented in treatment notes, the preponderance of the evidence supports a finding that she can perform a range of medium exertion work activities with the mental limitations set forth above.[99]

Accordingly, while there may be evidence that could support a more restricting RFC or even a finding of disability, a review of the record and the ALJ's decision shows that the ALJ here presented good reasons, stated clearly in the opinion itself, for not assigning Dr. Thakore's functional limitation opinion controlling weight and further grounded the RFC that was ultimately fashioned on substantial evidence.

---

[97] *Id.* at 25-26.

[98] *Id.* at 26.

[99] *Id.*

## Conclusion

Thus, for the reasons stated, substantial evidence supports the finding of the Commissioner that French had no disability. The denial of French's applications is affirmed.

IT IS SO ORDERED.


Dated: September 15, 2014                          s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge